## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| Rickey Logan,<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>Biomet, Inc.,<br>Biomet Orthopedics, LLC,<br>Biomet Manufacturing, LLC,<br>Biomet U.S. Reconstruction, LLC,<br><br>    **Defendants.** | § § § § § § § § § § § § § | **CIVIL ACTION No.: 3:12-MD-2391**<br><br>**COMPLAINT JURY TRIAL DEMANDED** |

### INTRODUCTION

1.  This is a product liability case involving a defective hip implant system. The Plaintiff identified in the above caption ("Plaintiff") had the Biomet M2a Magnum Metal-on-Metal Hip System ("M2a Hip System") implanted in both her right and left hips. The M2a Hip System is defective and causes excessive amounts of cobalt and chromium to corrode and wear from the surfaces of the device, which in turn causes the hip implant to fail and the surrounding tissue and bone to die. As a result of these defects, Plaintiff's M2a Hip Systems failed, resulting in toxic levels of cobalt and chromium in her body, caused tissue and bone destruction, and required Plaintiff to undergo complicated and risky surgeries to remove and replace the defective implants in her both right and left hips.

2.  The allegations made herein are made in good faith based upon the medical records and facts provided by Plaintiff, and as to those facts not personally known or so stated within the Plaintiff's medical and other related records, the allegations are made in good faith upon information and belief.

1

## THE PARTIES

3.     Plaintiff Rickey Logan is a resident of the State of Ohio.

4.     Defendant Biomet, Inc. is a corporation organized and existing under the laws of the State of Indiana with its primary place of business in Warsaw, Indiana.

5.     Defendant Biomet, Inc. is a resident of Indiana.

6.     Biomet, Inc. designed, manufactured, marketed, promoted and sold the M2a Hip System that is the subject of this lawsuit.

7.     Biomet, Inc. marketed, promoted, and sold the M2a Hip System in Ohio.

8.     Biomet, Inc. is the sole member of Biomet, Inc. subsidiary Biomet Orthopedics, LLC.

9.     Defendant Biomet Orthopedics, LLC is a limited liability corporation organized and existing under the laws of the State of Indiana with its primary place of business in Warsaw, Indiana.

10.     Biomet Orthopedics, LLC is a resident of Indiana.

11.     Biomet Orthopedics, LLC designed, manufactured, marketed, promoted and sold the M2a Hip System that is the subject of this lawsuit.

12.     Biomet Orthopedics, LLC marketed, promoted, and sold the M2a Hip System in Ohio.

13.     Biomet, Inc. is the sole member of Biomet, Inc. subsidiary Biomet Manufacturing, LLC.

14.     Defendant Biomet Manufacturing, LLC is a limited liability corporation organized and existing under the laws of the State of Indiana with its primary place of business in Warsaw, Indiana.

15.     Biomet Manufacturing, LLC is a resident of Indiana.

16.     Biomet Manufacturing, LLC designed, manufactured, marketed, promoted and sold the M2a Hip System that is the subject of this lawsuit.

17.     Biomet Manufacturing, LLC marketed, promoted, and sold the M2a Hip System in Ohio.

18.     Biomet Manufacturing, LLC was formerly known as Biomet Manufacturing Corp.

19.     Biomet Manufacturing Corp. designed, manufactured, marketed, promoted and sold the M2a Hip System that is the subject of this lawsuit.

20.     Biomet Manufacturing Corp. marketed, promoted, and sold the M2a Hip System in Ohio.

21.     Biomet, Inc. is the sole member of Biomet, Inc. subsidiary Biomet US Reconstruction, LLC.

22.     Defendant Biomet US Reconstruction, LLC is a limited liability corporation organized and existing under the laws of the State of Indiana with its primary place of business in Warsaw, Indiana.

23.     Biomet US Reconstruction, LLC is a resident of Indiana.

24.     Biomet US Reconstruction, LLC designed, manufactured, marketed, promoted and sold the M2a Hip System that is the subject of this lawsuit.

25.     Biomet US Reconstruction, LLC marketed, promoted, and sold the M2a Hip System in Ohio.

26.     Biomet, Inc., Biomet Orthopedics, LLC, Biomet Manufacturing Corp., Biomet Manufacturing, LLC and Biomet U.S. Reconstruction, LLC are collectively referred to herein as "Defendants".

27.     At all times relevant herein, Defendants were the agents of each other, and in doing the things alleged herein, each defendant was acting within the course and scope of their agency and were subject to and under the supervision of the co-defendants.


**JURISDICTION AND VENUE**

3

28.     This is a civil action in which this Court has original jurisdiction under 28 U.S.C. section 1332, as there is complete diversity between Plaintiff and Defendants, and the amount in controversy exceeds the sum or value of $75,000, exclusive of costs and interest.

29.     Pursuant to MDL 2391 Transfer Order dated October 2, 2012, Venue of this case is appropriate in the United States District Court for the Northern District of Indiana. In the event of remand, venue would be proper in the United States District Court for the Southern District of Ohio because Plaintiff resides in that district and the wrongful acts upon which this lawsuit is based occurred, in part, in that district.  Venue would also then be proper pursuant to 28 U.S.C. § 1391(c) because Defendants are all corporations that have substantial, systemic, and continuous contacts in the United States District Court for the Southern District of Ohio and are thus subject to personal jurisdiction in that district.

30.     Plaintiff states that but for the Order permitting direct filing into the Northern District of Indiana pursuant to the Case Management Order issued by the Court, Plaintiff would have filed in the United States District Court for the Southern District of Ohio. Therefore, Plaintiff respectfully requests that at the time of transfer of this action back to the trial court for further proceedings that this case be transferred to the above referenced District Court.

**BIOMET'S M2A HIP SYSTEM**

31.     The hip joint is where the femur connects to the pelvis. The joint is made up of the femoral head (a ball-like structure at the very top of the femur) rotating within the acetabulum (a cup-like structure at the bottom of the pelvis). In a healthy hip, both the femur and the acetabulum are strong and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids.

32.     A total hip replacement replaces the body's natural joint with an artificial one, usually made out of metal and plastic. A typical total hip replacement system consists of four separate components: (1) a femoral stem, (2) a femoral head, (3) a plastic (polyethylene) liner and (4) an acetabular shell. After the surgeon hollows out a patient's femur bone, the femoral stem is implanted. The femoral head is a metal ball that is fixed on top of the femoral stem. The femoral head forms the hip joint when it is placed inside the polyethylene liner and acetabular shell.

33.     While most hip replacements use a polyethylene plastic acetabular liner, Biomet's M2a Hip System has a critical difference: it is a monoblock system which does not have any acetabular liner at all. Instead, the M2a Hip System forces metal to rub against metal with the full weight and pressure of the human body. Because of Defendants' defective design for the M2a Hip System, hundreds of patients, including Plaintiff, have been forced to undergo revision surgeries to replace the failed hip implants.

34.     The M2a Hip System suffers from a design or manufacturing defect that causes excessive amounts of cobalt and chromium to wear and corrode from the surface of the acetabular cup, from the femoral head, and from the taper adapter. These cobalt and chromium fragments prompt the body to react by rejecting the hip implant. This rejection often manifests with symptoms of pain, looseness, dislocation and squeaking and popping sounds. Inside the hip joint, the metal reaction often causes fluids to accumulate and soft tissues and bone to die.

35.     The design of the M2a Hip System was not sufficiently tested by Defendants and it was never approved by the FDA as being safe or effective for the products' intended purpose.

36.     At all times relevant to this complaint, Defendants assured orthopedic surgeons in the United States, including Plaintiff's orthopedic surgeon, that the M2a Hip System was safe, was the best product on the market, had an excellent track record and a low and acceptable failure rate. Defendants continued to "defend" the M2a Hip Implant even after they became aware of numerous and serious complications with the M2a Hip System. Defendants did not reveal (and instead concealed) their knowledge of numerous and serious complications and other "bad data" during their meetings with orthopedic surgeons, including Plaintiff's orthopedic surgeon.

37.     Despite its knowledge that the M2a Hip System was defective, Defendants also made several false representations about specific design elements of the M2a Hip System that they claimed made it superior to other safer hip implants on the market.

38.     For example, Defendants have represented that:

        a.  "The M2a-Magnum™ Large Metal Articulation System offers optimal joint mechanic restoration and ultra-low-wear rates *in vivo*.", and

        b.  "Many studies conducted over the last several decades have shown no definitive correlation of negative health issues to ion levels exhibited from metal-on-metal implants."

39.     Defendants concealed the defects in the M2a Hip System to maximize profits. Defendants promoted, marketed and sold the M2a Hip System with the knowledge of the defects and without regard for patient safety. Defendants continued to promote, market and sell these defective implants without any warning about the risks or the failures that had been reported to the company.

## STATEMENT OF FACTS

40.   Plaintiff underwent a total replacement of the right hip on December 11, 2009, at which time the Defendants' M2a Hip System was implanted.

41.   Plaintiff underwent a total replacement of the left hip on April 15, 2010, at which time the Defendants' M2a Hip System was implanted.

42.   Prior to Plaintiff receiving the M2a Hip System, Defendants knew that the M2a Hip System was defective and harmful to consumers and that it had an unacceptable failure and complication rate.

43.   Prior to Plaintiff receiving the M2a Hip System, Defendants had a legal and moral obligation to stop selling the M2a Hip System and to notify physicians who had implanted the M2a Hip System to be aware of the propensity for the M2a Hip System's acetabular cup to detach, disconnect and/or loosen from the acetabulum, and for some patients to develop adverse reactions to high levels of metal debris generated by normal use of the M2a Hip System.

44.   After receiving the two (2) M2a Hip Systems, Plaintiff suffered extreme hip pain in both her right and her left hips.

45.   After receiving the M2a Hip System, Plaintiff learned that the M2a Hip Systems were failing and releasing metal ions into her body.

46.   As a direct and legal result of the failure of her M2a Hip System, Plaintiff underwent a revision surgery for her right hip on October 17, 2017.

47.   As a direct and legal result of the failure of her M2a Hip System, Plaintiff underwent a revision surgery for her left hip on February 13, 2018.

48.    As a direct and legal result of the failure of her two (2) separate M2a Hip Systems, Plaintiff suffers and will continue to suffer from injuries of a permanent and lasting nature.

49.    As a direct and legal result of the failure of the two (2) separate M2a Hip Systems, Plaintiff will need many years of continuous medical treatment.

50.    Prior to Plaintiff receiving the M2a Hip System, Defendants knew or should have known that the use of the M2a Hip System created a risk of serious bodily injury in patients.

51.    Defendants failed to warn Plaintiff and Plaintiff's healthcare providers about the serious health risks associated with the M2a Hip System and failed to disclose the fact that there were safer alternative products.

52.    Defendants have repeatedly and consistently failed to advise consumers and their healthcare providers of the risks associated with the M2a Hip System.

53.    Had Plaintiff and/or Plaintiff's healthcare providers been warned about the risks associated with the M2a Hip System, Plaintiff would not have been implanted with this device and would not have been injured.

54.    As a direct and legal result of Plaintiff receiving the two (2) separate M2a Hip Systems, Plaintiff has suffered severe physical injuries and pain and suffering in both her left and her right hips, including, but not limited to, the effects of metal ion debris in her body and the need for revision surgeries on both her left and her right hips to remove and replace the defective M2a Hip Systems.

55.    Plaintiff's physical injuries and pain and suffering will inevitably worsen over time.

56.    As a direct and legal result of being implanted with the two (2) M2a Hip Systems, Plaintiff suffered and will continue to suffer significant psychological, mental and emotional pain and suffering, and anguish and distress.

57.     As a direct and legal result of being implanted with the two (2) M2a Hip Systems, Plaintiff has also incurred medical expenses and other economic damages, including loss of income and earning capacity, and will continue to incur such expenses in the future.

### DISCOVERY RULE AND FRAUDULENT CONCEALMENT

58.     The nature of Plaintiff's injuries and damages, and the damages and defects caused by the M2a Hip Systems in her left and her right hips, were not discovered, and through reasonable care and due diligence could not have been discovered, by Plaintiff, until a time less than two (2) years prior the filing of this Complaint.

59.     Defendants were aware of the defects in the M2a Hip System, but hid this fact from Plaintiff and her physicians. As late as October 2010, Defendants were advertising to physicians and patients that the M2a Hip System did not suffer from the same defects as the DePuy ASR which cause metallosis and increased revision rates.

60.     Defendants claimed that the M2a Hip System had a 99.2% survivor rate after three years.

61.     Defendants' statements are misleading and were made to prevent patients and physicians from discovering that the M2a Hip System was defective both in its design and manufacture; and further served to prevent Plaintiff from discovering that failures of the M2a Hip System were caused by the actions of the Defendants.

62.     Due to Defendants' actions, they are estopped from asserting a statute of limitations defense because Defendants fraudulently concealed from Plaintiff the nature of Plaintiff's injuries and the connection between the injury and Defendants' tortious conduct.

63.     Due to Defendants' actions, they are estopped from asserting a statute of limitations defense because Plaintiff's injuries were not discovered until she was indicated for revision surgery.

## COUNT I

### STRICT LIABILITY: MANUFACTURING DEFECT

#### (Against all Defendants)

64.     Plaintiff incorporates by reference and re-alleges each paragraph set forth above.

65.     Prior to Plaintiff's hip replacement surgeries and at all relevant times, Defendants designed, distributed, manufactured, sold and marketed the M2a Hip System for implantation into consumers, such as Plaintiff.

66.     The M2a Hip System components implanted in Plaintiff contained manufacturing defects in that they differ from the manufacturer's design or specifications, or from other typical units of the same product line, specifically, said defects include, but are not limited to, the fact that the M2a Hip System's acetabular cup had a tendency to detach, disconnect, and/or loosen from a patient's acetabulum, and cause pain, inhibit movement and require revision surgery.  Said defects also include the fact that the clearance between the M2a Hip System's acetabular cup and femoral head are less than called for in design specifications, resulting in excessive wear and causing the M2a Hip System to generate dangerous and harmful levels of toxic metal debris in the patient's body.

67.     Plaintiff's physicians employed the M2a Hip System in the manner in which the M2a Hip System was intended to be used, making such use reasonably foreseeable to Defendants.

68.     As a direct and legal result of Defendants' design, manufacture, marketing and sale of the M2a Hip System, Plaintiff suffered the injuries herein described.

69.     Defective design and manufacture, and marketing and sale of the M2a Hip Systems that were implanted in Plaintiff were substantial factors in causing Plaintiff's injuries, as described herein.

70.     As a direct and legal result of Defendants' design, manufacture, marketing and sale of the M2a Hip System, Plaintiff suffered the herein described injuries, including pain and elevated metal ion debris, revision surgeries, and other injuries presently unknown.

71.     As a direct and legal result of Defendants' design, manufacture, marketing and sale of the M2a Hip System, it became necessary for Plaintiff to incur expenses for doctors, hospitals, surgeries, nurses and other reasonably required and medically necessary supplies and services, which are still continuing.

72.     As a direct and legal result of Defendants' design, manufacture, marketing and sale of the M2a Hip System, Plaintiffs were implanted with a defective M2a Hip System and have suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

<u>COUNT II</u>

**STRICT LIABILITY: FAILURE TO WARN**

**(Against all Defendants)**

73.     Plaintiff incorporates by reference and re-allege each paragraph set forth above.

74.     Prior to Plaintiff's initial hip replacement surgeries and at all relevant times, Defendants designed, manufactured, marketed, distributed and sold the M2a Hip System for implantation into consumers, such as Plaintiff, by physicians and surgeons in the United States.

75.     The M2a Hip System had potential risks and side effects that were known or knowable to Defendants by the use of scientific knowledge available at and after the time of manufacture, marketing, distribution and sale of the M2a Hip System that was implanted

in Plaintiff. Defendants knew or should have known of the defective condition, characteristics and risks associated with said product, as previously set forth herein.

76.    The M2a Hip System that was designed, manufactured, marketed, distributed and sold by Defendants and implanted in Plaintiff was in a defective condition that was unreasonably and substantially dangerous to ordinary patients, such as Plaintiff.  Ordinary patients and their physicians, including Plaintiff and Plaintiff's physicians, would not and could not have recognized or discovered the potential risks and side effects of the M2a Hip System as set forth herein.

77.    The warnings and directions provided with the M2a Hip System by Defendants failed to adequately warn of the potential risks and side effects of the M2a Hip System and the dangerous propensities of said medical device, which risks were known or were reasonably scientifically knowable to Defendants.

78.    The warnings to Plaintiff and Plaintiff's implanting physicians about the dangers the M2a Hip System posed to patients were inadequate.  Examples of the inadequacy of Defendants' warnings include, but are not limited to, one or more of the following particulars:

   a.   The M2a Hip System warnings were insufficient to alert Plaintiff and Plaintiff's physicians as to the risk, scope, duration and severity of adverse events and/or reactions associated with the M2a Hip System, subjecting Plaintiff to risks which exceeded the benefits of the M2a Hip System;

   b.   Defendants sold the M2a Hip System using misleading material emphasizing the efficacy of the M2a Hip System while downplaying the risks associated with it thereby making use of the M2a Hip System more dangerous than the ordinary patient and physician would expect;

c.   Defendants failed to disclose that the M2a Hip System was inadequately tested;

d.   Defendants failed to convey adequate post-marketing warnings regarding the risk, severity, scope and/or duration of the dangers posed by the M2a Hip System; and

e.   Defendants failed to provide physicians, including Plaintiff's physicians, with information and instructions sufficient to avoid or mitigate the M2a Hip System's dangers.

79.   Defendants' M2a Hip System components were expected to and did reach Plaintiff and Plaintiff's physicians without substantial change in their condition as designed, manufactured, distributed and sold by Defendants. Additionally, Plaintiff's physicians used the M2a Hip System in the manner in which the M2a Hip System was intended to be used, making such use reasonably foreseeable to Defendants.

80.   As a direct and legal result of Defendants' manufacture, marketing, distribution and sale of the M2a Hip System, Plaintiff was implanted with a M2a Hip System and has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

81.   Defendants' lack of sufficient instructions or warnings prior to and after the date of Plaintiff's M2a Hip System hip replacement surgeries were a substantial factor in causing Plaintiff's injuries and damages, as described herein.

## COUNT III

### NEGLIGENCE

### (Against all Defendants)

82.   Plaintiff incorporates by reference and re-alleges each paragraph set forth above.

83.    Defendants had a duty to exercise reasonable care in the design, formulation, testing, manufacture, labeling, marketing, sale and/or distribution of the M2a Hip System. In particular, they had a duty to assure that their products did not pose an unreasonable risk of bodily harm and adverse events.

84.    Defendants failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, marketing or distribution of the M2a Hip System in that they knew or should have known that the M2a Hip System could cause significant bodily harm and was not safe for use.

85.    Defendants failed to exercise ordinary care in the labeling of the M2a Hip System and failed to issue to consumers and their healthcare providers adequate warnings concerning the risks of serious bodily injury due to the M2a Hip System.

86.    Despite the fact that Defendants knew or should have known that the M2a Hip System posed a serious risk of bodily harm to consumers, Defendants unreasonably continued to manufacture and market M2a Hip System and failed to exercise reasonable care with respect to post-sale warnings and instructions for safe use.

87.    At all relevant times, it was foreseeable to Defendants that consumers, like Plaintiff, would suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

88.    As a direct and legal result of Defendants' negligence, Plaintiff has suffered physical injuries, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

89.    Defendants' negligence prior to and after the date of Plaintiff's M2a Hip System hip replacement surgeries were a substantial factor in causing Plaintiff's injuries and damages, as described herein.

## COUNT IV

### NEGLIGENCE: DESIGN DEFECT

### (Against all Defendants)

90.     Plaintiff incorporates by reference and re-alleges each paragraph set forth above.

91.     Defendants had a duty to exercise reasonable care in the design of the M2a Hip System. In particular, they had a duty to assure that their products did not pose an unreasonable risk of bodily harm and adverse events due to the design.

92.     Defendants failed to exercise reasonable care in the design and formulation of the M2a Hip System in that they knew or should have known that the M2a Hip System could cause significant bodily harm and was not safe for use by consumers.

93.     Defendants' negligence in designing the M2a Hip System includes but is not limited to the fact that the M2a Hip System was negligently designed and manufactured creating increased metal wear and corrosion.

94.     At all relevant times, it was foreseeable to Defendants that patients like Plaintiff would suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

95.     As a direct and legal result of Defendants' negligence, Plaintiff has suffered physical injuries, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

96.     Defendants' negligence in designing the M2a Hip System was prior to the date of Plaintiff's M2a Hip System hip replacement surgery and was a substantial factor in causing Plaintiff's injuries and damages as described herein.

## COUNT V

### FRAUDULENT CONCEALMENT

### (Against all Defendants)

97.     Plaintiff incorporates by reference and re-alleges each paragraph set forth above.

98.     Defendants omitted, suppressed, and/or concealed material facts concerning the dangers and risks associated with the use of the M2a Hip System.

99.     Further, Defendants purposely downplayed and understated the serious nature of the risks associated with use of the M2a Hip System in order to increase and sustain sales.

100.    Defendants had a duty to disclose that the M2a Hip System was not safe for use in patients and posed an unacceptably high rate of failure and release of metal ion debris.

101.    The facts that Defendants omitted, suppressed and concealed were material to the consumers and their physicians, and, in particular, to Plaintiff and Plaintiff's physician's decision to implant M2a Hip Systems in Plaintiff.

102.    Defendants had superior knowledge of the facts that they omitted, suppressed and concealed.

103.    Defendants omitted, suppressed and concealed material facts, as set forth above, while making false, misleading and partial representations regarding the M2a Hip System.

104.    Defendants actively concealed material facts, as set forth above, by continuing to market and sell M2a Hip System hip implants despite their knowledge that the M2a Hip System hip implants are defective and pose serious risk of injury. In response to reports of high incidence of failure of the M2a Hip System hip implants, Defendants purposely downplayed and understated the serious nature of the risks associated with use of the M2a Hip System in order to increase and sustain sales.

105.   Plaintiff and Plaintiff's physicians did not know, and could not have learned of the facts that the Defendants omitted and suppressed.

106.   Defendants' omission, suppression and concealment of material facts, as set forth above, induced reasonable and justifiable reliance by Plaintiff and Plaintiff's healthcare providers in that Plaintiff and Plaintiff's healthcare providers made the decision to use a M2a Hip System hip implant without the knowledge of said material facts. Instead, Plaintiff and Plaintiff's healthcare providers reasonably and justifiably relied on the Defendants' representations that the M2a Hip System was safe for use and that Defendants' labeling, marketing and promotional materials fully described all known risks associated with the product. Had Plaintiff and Plaintiff's healthcare providers known that the M2a Hip System was not safe and posed an unacceptably high rate of failure and release of metal ion debris, Plaintiff would not have had a M2a Hip System implanted.

107.   As a direct and legal result of Defendants' concealment of material facts, Plaintiff was implanted with an M2a hip System and has suffered physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

108.   The foregoing acts, conduct and omissions of Defendants were vile, base, willful, malicious, wanton, oppressive and fraudulent, and were done with a conscious disregard for the health, safety and rights of Plaintiff and other users of Defendants' M2a Hip System, and for the primary purpose of increasing Defendants' profits. As such, Plaintiff is entitled to exemplary damages.

## COUNT VI

### BREACH OF IMPLIED WARRANTIES

#### (Against all Defendants)

109.   Plaintiff incorporates by reference and re-alleges each paragraph set forth above.

110.   Prior to the time that the M2a Hip System was used by Plaintiff, Defendants impliedly warranted to Plaintiff and Plaintiff's physicians that the M2a Hip System was of merchantable quality and safe and fit for the use for which it was intended.

111.   Plaintiff and Plaintiff's physicians were and are unskilled in the research, design and manufacture of the M2a Hip System, and they reasonably relied entirely on the skill, judgment and implied warranty of Defendants in using the M2a Hip System.

112.   The M2a Hip System was neither safe for its intended use nor of merchantable quality as warranted by Defendants in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

113.   Defendants, by selling, delivering and/or distributing the defective M2a Hip System to Plaintiff, breached the implied warranty of merchantability and fitness and caused Plaintiff to suffer severe pain and emotional distress, incur medical expenses and incur a loss of earning capacity.

114.   As a result of the aforementioned breach of implied warranties by Defendants, Plaintiff suffered injuries and damages as alleged herein.

## COUNT VII

### BREACH OF EXPRESS WARRANTY

#### (Against all Defendants)

115.   Plaintiff incorporates by reference and re-alleges each paragraph set forth above.

116.   At all times herein mentioned, Defendants expressly warranted to Plaintiff and Plaintiff's physicians, by and through statements made by Defendants, or their authorized agents or sales representatives, orally and in publications, package inserts, and other written materials intended for physicians, medical patients and the general public, that the aforementioned M2a Hip System was safe, effective, fit and proper for its intended use.

117.   In utilizing the M2a Hip System, Plaintiff and Plaintiff's physicians relied on the skill, judgment, representations and foregoing express warranties of Defendants.

118.   Said warranties and representations were false in that the M2a Hip Systems were not safe and were unfit for the uses for which they were intended.

119.   As a result of the foregoing breach of express warranties by Defendants, Plaintiff suffered injuries and damages as alleged herein.

**WHEREFORE,** Plaintiff prays for relief as follows:

A.   Compensatory damages in excess of the jurisdictional amount, including, but not limited to physical pain and suffering, and psychological and mental emotional anguish and distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

B.   Past and future medical expenses, income, and other economic damages in an amount to be determined at trial of this action;

C.   Punitive damages in an amount to be determined at trial of this action;

D.   Pre- and post-judgment interest;

E.   Attorneys' fees, expenses, and costs; and

F.   Such other and further relief as this Court deems necessary, just and proper.

Dated: July 6, 2018

Attorney for Plaintiff

Allan J. Ahearne, Jr., Esq.
The Ahearne Law Firm, PLLC
24 Main Street
Warwick, NY 10990
Telephone: (845) 986-2777
Fax: (212) 203-7710

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims so triable.


Dated: July 6, 2018


Attorney for Plaintiff


Allan J. Ahearne, Jr., Esq.
The Ahearne Law Firm, PLLC
24 Main Street
Warwick, NY 10990
Telephone: (845) 986-2777
Fax: (212) 203-7710

## Certificate of Service

The undersigned hereby certifies that the foregoing Complaint has been filed using the

Court's CM/ECF system this 5th day of July, 2018, thereby serving all registered parties.


_____

Allan J. Ahearne, Jr., Esq.
The Ahearne Law Firm, PLLC
24 Main Street
Warwick, NY 10990
Telephone: (845) 986-2777
Fax: (212) 203-7710